IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CAREY CASS HUDSON, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § NO. 4:09-CV-483-A |
| | § |
| CITY OF FORT WORTH, TEXAS, | § |
| ET AL., | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
and
ORDER

Now before the court are motions for summary judgment filed in the above-captioned action by defendants, City of Fort Worth, Texas ("City"), Officer F.V. Anderson ("Anderson"), and Officer Harris ("Harris"). Plaintiff, Carey Cass Hudson, responded to each motion, and each defendant filed a reply. Additionally, upon leave of court, City filed an amended pleading and supplemental appendix, Anderson filed a supplemental appendix, and plaintiff filed a supplemental response.[1] Having considered the motions and all of the parties' filings, the entire summary judgment record, and pertinent legal authorities, the court concludes that Anderson's motion should be granted, Harris's

---

[1] Plaintiff also filed a motion to strike certain of City's summary judgment evidence. Rather than rule on the motion, the court will give the disputed evidence the weight and consideration it deserves.

motion should be denied, and City's motion should be granted on a limited basis as to its claim of sovereign immunity but should otherwise be denied.

I.

Nature of the Action

This action was instituted by a petition filed July 21, 2009, in the state district court of Tarrant County, Texas. City removed the action to this court on August 14, 2009. Plaintiff's petition originally asserted a claim pursuant to 42 U.S.C. § 1983 for excessive force in violation of plaintiff's Fourth Amendment rights; violation by City of plaintiff's right to due process by "depriving him of his physical well being," Notice of Removal, Ex. 3, at 4; negligence, assault and battery, conspiracy, and refusal of medical care against all defendants. In response to City's motion to dismiss plaintiff's state-law claims, the court on December 28, 2009, dismissed the negligence, assault and battery, and conspiracy claims against Anderson and Harris, as well as any state-law claim for refusal of medical care.[2]

---

[2]The petition is unclear as to whether the claim for refusal of medical care arises under state or federal law.

2

II.

<u>Grounds of the Motion</u>

Anderson contends that summary judgment is warranted because she is entitled to qualified immunity, and no summary judgment evidence shows that Anderson refused plaintiff medical care.[3] Harris likewise contends he is entitled to qualified immunity, and additionally argues that summary judgment is proper as to the excessive force claim because plaintiff cannot establish his claim under the required standard. Harris further contends that plaintiff cannot prevail on his claims for refusal of medical care and conspiracy.

City contends that it is entitled to summary judgment because plaintiff cannot demonstrate that City had a policy or custom that caused a deprivation of his constitutional rights, its training policy is adequate, and it has not waived its sovereign immunity.[4]

---

[3] Although Anderson also briefed the issues of excessive force and conspiracy, the petition does not allege a cause of action against her for excessive force, and the court previously dismissed the conspiracy claims against Anderson and Harris. Accordingly, the court need not address those issues.

[4] In its brief, City argues for summary judgment on what it contends is plaintiff's claim for false or unlawful arrest. It appears City may have gleaned this claim from statements in the petition under the heading "Negligence," whereby plaintiff contends defendants owed plaintiff a duty to act reasonably "when they . . . unlawfully restrained him and assaulted him." Notice of Removal, Ex. 3 at 4. Taken in context and considering that the statements appear under the heading "Negligence," the court concludes plaintiff is describing the contours of his negligence claim, rather than stating a claim for false arrest.

3

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

At the time of the events giving rise to this litigation, Anderson and Harris were both employed as police officers with the Fort Worth Police Department.[5] On June 15, 2008, at or around 2:47 a.m., Anderson observed plaintiff attempting to change a tire on the side of the road in the 1900 block of I.M. Terrell Way, which she knew to be a high-crime area. Believing plaintiff to be a stranded motorist, Anderson stopped to offer assistance. Based on her observations of plaintiff at the scene, Anderson believed plaintiff was intoxicated and placed him under arrest.[6]

Upon arrival at the jail in downtown Fort Worth, plaintiff was booked and placed in a holding cell. At some point Anderson took plaintiff to the intoxilizer video room; however, plaintiff

---

[5] Anderson resigned from her position with the Fort Worth Police Department for personal reasons effective January 15, 2010.

[6] Plaintiff seems to dispute Anderson's contention that he was intoxicated at the time of his arrest. However, aside from Anderson, other witnesses, including one of the emergency medical technicians later called to the jail, also testified to smelling alcohol on plaintiff's breath. Plaintiff's blood test later revealed 0.19 gram of ethyl alcohol per 100 milliliters of blood, more than twice the legal limit of 0.08 grams per 100 milliliters of blood set forth in Tex. Penal Code Ann. § 49.01.

refused to perform sobriety tests or submit to a breath test and was returned to his cell.

Anderson then decided to obtain a warrant to take a blood sample from plaintiff for the purpose of determining his blood alcohol level. Lacking experience in this area, Anderson sought assistance from Harris, who at that time was assigned to a DWI task force and had more experience with blood warrants than Anderson. While plaintiff was still in the holding cell, Harris handcuffed plaintiff's hands behind his back and, along with Anderson and other officers, began to escort plaintiff from his cell towards the exit. During this time plaintiff attempted to turn towards Harris at least once, and Harris and plaintiff exchanged words, although the exact nature of what was said is in dispute.

The events occurring from approximately this point until approximately the time plaintiff was taken to the hospital were captured on the jail's video surveillance cameras. The court has reviewed the video footage supplied by the parties. After leaving the cell and rounding a corner, plaintiff turned toward Harris, although again the parties dispute the nature of plaintiff's actions and any words exchanged. Harris then pushed plaintiff face-first against a door and held him there for a few

seconds. Harris then quickly forced plaintiff to the ground face-first, causing plaintiff's face to hit the floor. After a short time, plaintiff rolled onto his side, and a pool of blood is visible on the floor. Jail officials tended to plaintiff's injuries, and he was escorted outside.

Emergency services were called, and emergency medical technicians ("EMTs") arrived shortly thereafter and tended to plaintiff. The EMTs did not transport plaintiff to the hospital; according to one EMT, police officers informed the EMTs they would transport plaintiff to the hospital themselves. Another Fort Worth police officer, Officer Rogers, along with Anderson, drove plaintiff to the hospital. Harris arrived at the hospital by separate vehicle. Hospital staff drew plaintiff's blood and he was returned to the jail.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden to show that there is no genuine issue of material fact.

Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support an essential element of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.  Qualified Immunity

Both Anderson and Harris argue that they are entitled to summary judgment on the basis of qualified immunity. Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40.

In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be

8

said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.), cert. denied, 506 U.S. 973 (1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). See also Pearson v. Callahan, --U.S.--, 129 S. Ct. 808, 818 (2009) (holding that the sequence of the two-step inquiry for qualified immunity analysis is no longer mandatory). In so doing, the court should not assume that plaintiff has stated a claim, i.e.,

asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller of the Currency, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229.

B. Anderson is Entitled to Qualified Immunity

Anderson contends she is entitled to qualified immunity because none of her actions violated any of plaintiff's clearly established constitutional rights, and even if she did, her actions were at all times objectively reasonable.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). Thus, once a defendant pleads the defense of qualified immunity, the plaintiff must rebut this defense by

10

establishing that the defendant's alleged conduct violated clearly established law. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008) (citing Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001)). To do so, the plaintiff must allege specific facts that support the individual defendant's role in the alleged constitutional violation. Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002). As the Supreme Court described the inquiry, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 129 S. Ct. at 818. The answer as to Anderson is "no."

The only remaining claim against Anderson is the alleged refusal of medical care. To prevail on such a claim, plaintiff must show that Anderson "acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir. 2000). To establish deliberate indifference

> requires that the official have subjective knowledge of the risk of harm. . . . Mere negligence will not suffice, and [d]eliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a . . . failure to act reasonably.

Id. (internal citations & quotation marks omitted, brackets in

original).

The petition contains no specific factual allegations against Anderson concerning the alleged refusal of medical care. As to that claim, the petition states only that "[w]hile in the custody of the Fort Worth Police Department and while suffering obvious severe injuries the Defendants twice refused [plaintiff] appropriate medical care to access [sic] and treat his injuries." Notice of Removal, Ex. 3 at 5. These allegations fail to demonstrate that Anderson acted with deliberate indifference. Further, the video evidence fails to sustain any contention that Anderson refused to allow plaintiff access to medical care at the scene.[7]

It is undisputed that emergency services were called after the incident between Harris and plaintiff, and it is undisputed that no one prevented EMTs from tending to plaintiff at the scene. After the EMTs tended to plaintiff, one asked Anderson to sign an electronic statement refusing treatment and releasing the ambulance company and its employees from liability for that refusal. Anderson claims the outside area where she was standing

---

[7] In his reply pursuant to Rule 7(a) of the Federal Rules of Civil Procedure, plaintiff further contends that immediately after Harris took down plaintiff, while plaintiff was still lying on the floor, Harris and Anderson both refused to allow EMTs to examine or treat him. Those allegations, as shown by the video evidence, are false.

12

was dark and she was unable to clearly read what she was signing. Whether or not such was the case, Anderson signing the statement fails to state a violation of a constitutional right, as it is undisputed that officers subsequently transported plaintiff to the hospital themselves after the EMTs finished treating plaintiff's injuries at the scene.

Plaintiff does not allege that Anderson prevented nurses at the hospital from treating his injuries. Although plaintiff speculates in his response that Anderson should have known that Harris refused to allow hospital staff to treat him and should have done something to correct the situation, such speculation is insufficient to overcome Anderson's entitlement to qualified immunity.[8] No summary judgment evidence establishes that Anderson knew Harris refused to allow hospital staff to treat plaintiff's injuries. Plaintiff has alleged nothing, nor produced summary judgment evidence, to support a contention that Anderson was deliberately indifferent to plaintiff's need for medical care or to overcome her qualified immunity.

---

[8] It is undisputed that Anderson was not Harris's supervisor, and even if she was, she could not be held vicariously liable for Harris's actions. See Ashcroft v. Iqbal, --U.S.--, 129 S. Ct. 1937, 1948-49 (U.S. 2009).

C.  <u>Harris is Not Entitled to Summary Judgment</u>

Harris contends he is entitled to qualified immunity as to plaintiff's claims against him for excessive force and refusal of medical care. However, the court concludes that there are genuine issues of material fact as to whether Harris acted in an objectively reasonable manner that preclude summary judgment on the issue of qualified immunity. See <u>Mangieri v. Clifton</u>, 29 F.3d 1012, 1016 (5th Cir. 1994).

D.  <u>Claims Against City</u>

  1.  <u>Excessive Force</u>

City contends plaintiff has failed to point to any written policy of the Fort Worth Police Department that resulted in the deprivation of plaintiff's constitutional rights. City has provided copies of its policy concerning "use of force."

Plaintiff has adduced summary judgment evidence that in two separate reviews of the incident, officers in Harris's chain of command approved of his actions as to the use of force against plaintiff. Reviewing officers specifically commented that "policy & procedures were followed," Pl.'s App. at 16, Harris's "use of force [was] reasonable," <u>id.</u> at 17, and that Harris's actions were "appropriate and in line with his training," <u>id.</u> at 9. The court concludes that such evidence is sufficient to raise

14

an issue of material fact as to whether City had a policy or custom authorizing actions such as Harris's.

City contends none of the officers who reviewed Harris's actions was a policymaker, and therefore their actions cannot be imputed to City for determining liability under § 1983. City has adduced no summary judgment evidence as to who was or was not the relevant policymaker within the police department. Accordingly, summary judgment is denied as to the claim of excessive force against City.

2. <u>Refusal of medical care</u>

As plaintiff points out, City failed to brief the issue of whether it can be liable for the alleged refusal of medical care. In its reply brief, City argues that it was not required to brief that issue, as the petition makes clear the medical indifference claim is asserted against Harris and Anderson, rather than against City.[9]

The court agrees that the petition is not a model of clarity, and that it is somewhat difficult to discern the exact contours of plaintiff's claims and against whom he asserts them.

---

[9]The court notes that in its motion to dismiss plaintiff's state-law claims against Anderson and Harris, City argues that it is unclear if the failure to provide medical care claim is brought under state or federal law, but then argues that plaintiff brought all state law claims against both City and the individual defendants, apparently including any state law claim for denial of medical care.

15

Nevertheless, in the court's order signed December 28, 2009, dismissing plaintiff's state-law claims against Anderson and Harris, the court concluded that "any state-law claim for failure to provide medical care, [is] also [a] claim[] against City. . . ." Order Signed Dec. 28, 2009, at 5. While plaintiff may not ultimately prevail on such a claim against City, the court will not grant summary judgment on an issue not raised by City in its motion.

### 3. City is Entitled to Summary Judgment on Plaintiff's State-Law Claims

City argues that it is entitled to summary judgment on all of plaintiff's claims because it has not waived its sovereign immunity. City apparently attempts to paint all of plaintiff's claims with a "state-law" brush, including what it characterizes as plaintiff's "intentional tort" claim of excessive force.[10] City's Am. Br. at 14. Plaintiff failed to respond to City's argument concerning sovereign immunity. While the court agrees that summary judgment is proper on plaintiff's state-law claims under the doctrine of sovereign immunity, it disagrees with

---

[10] In City's motion to dismiss state-law claims against Anderson and Harris, City seeks dismissal of all plaintiff's state law claims, which it identifies as "negligence, assault and battery, and conspiracy," and possibly a state-law claim for refusal of medical care. City's Mot. to Dismiss State Law Claims Against Individual Defs. and Brief in Supp., at 2. Absent from the list of state law claims for which City sought dismissal is any contention that plaintiff's claim of excessive force is a state-law claim.

16

City's characterization of plaintiff's excessive force claim as a state-law intentional tort, and sovereign immunity is inapplicable to that claim.

The sovereign immunity doctrine insulates City from plaintiff's state-law claims against it. Under the doctrine of sovereign immunity, a city cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving the city's sovereign immunity. See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994).

All of the state-law claims asserted by plaintiff against City--negligence, assault and battery, and conspiracy--are intentional torts. The Texas Tort Claims Act does not waive immunity for intentional torts, but instead expressly exempts from its coverage any claim "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code Ann. § 101.057; see also Taylor v. Gregg, 36 F.3d 453, 457 (5th Cir. 1994); City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex. App.--Houston [1st Dist.] 1995, no writ).

For the reasons given above, City is entitled to summary judgment as to plaintiff's claims of negligence, assault and battery, and conspiracy. Although a claim of excessive force could be considered an intentional tort barred by sovereign

17

immunity, City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex. App.--San Antonio 1990, writ denied), use of excessive force can also support a claim pursuant to § 1983 for an alleged violation of the Fourth Amendment. See id.; see also Graham v. Connor, 490 U.S. 386, 388 (U.S. 1989). Here, plaintiff alleged excessive force in violation of his Fourth Amendment rights. Thus, City is not entitled to summary judgment on the basis of sovereign immunity as to plaintiff's claim of excessive force.

VI.

Order

Therefore,

The court ORDERS that:

(i) Anderson's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Cary Cass Hudson, against Anderson be, and are hereby, dismissed with prejudice;

(ii) Harris's motion for summary judgment be, and is hereby, denied, except as to the conspiracy claim previously dismissed by the court's order signed December 28, 2009; and

(iii) City's motion for summary judgment be, and is hereby, granted as to plaintiff's state-law claims of negligence, assault and battery, and conspiracy, and be, and is hereby, denied as to

plaintiff's claims of refusal of medical care and excessive force.

SIGNED July 16, 2010.

_____
JOHN McBRYDE
United States District Judge